CARL HORNE *appellant, vs.* THE STATE OF KANSAS *appellee.*

The accused may stand upon the presumption of innocence until every material allegation and every ingredient of the crime are proved.

A few facts, or a multitude of facts proven, all consistent with the supposition of guilt, are not enough to warrant a verdict of guilty. In order to convict on circumstantial evidence, not only the circumstances must all concur to show that the prisoner committed the crime, but they must all be inconsistent with any other rational conclusion.

The fatal effect of a separate and an erroneous charge to a jury, upon a material point, is not cured by the Court having, in other parts of the charge, given the true rule of law as applicable to that point.

A charge to a jury, that the defendant and another person "might both be guilty of *this murder,*" is a mixed one of law and fact.

As a charge of fact, it intimates that *this* was *murder,* which is a fact or a conclusion from facts, the determining of which is the special and exclusive province of the jury. As a charge of law, it announces that two persons may be guilty as principals in one crime. This is true, and a proper instruction; but mixed with the fact of *this* being *murder,* it is error, because the jury were not informed that they were the exclusive judges of the facts.

The Court has a right to present the facts in his charge, but must, in that case, inform the jury that they are the exclusive judges of all questions of fact.

The plaintiff in error, Carl Horne, was convicted at the November term, 1861, of the First District Court for the State of Kansas, sitting in Leavenworth county, upon an indictment for murder in the first degree, founded upon section one, chapter twenty-eight, of the laws of the Territory of Kansas, passed by the Legislative Assembly thereof, and approved February 3d, 1859; and sentenced to be hung on the 24th day of January, A. D. 1862.

The following is a copy of the body of the indictment:

The grand jurors for the State of Kansas, and in and of the county of Leavenworth, duly empanneled, sworn and charged to inquire within and for said county, upon their solemn oaths do present, that Carl Horne, late of said county, at the county of Leavenworth aforesaid, and within the juris-

Carl Horne *v*. The State of Kansas.

diction of this Court, on the 30th day of August, A. D. 1861, in and upon one Philip Friend, in the peace of God and this State then and there being, unlawfully, feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did make an assault; and the said Carl Horne, with a certain ax made of iron and steel, which he, the said Carl Horne, then and there, in both of his hands had and held; the said Philip Friend in and upon the back and front part of the head of him, the said Philip Friend, and in and upon the breast of him, the said Philip Friend, then and there unlawfully, feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did strike, thrust, and penetrate, giving to the said Philip Friend, then and there, with the ax aforesaid, in and upon the back and front parts of the head of him, the said Philip Friend, and in and upon the breast of him, the said Philip Friend, several mortal wounds, of which said mortal wounds, so given as aforesaid by the said Carl Horne as aforesaid, he the said Philip Friend then and there, to wit: on the 30th day of August, A. D. 1861, at the county of Leavenworth aforesaid, and within the jurisdiction of this Court, instantly died; and so the grand jurors aforesaid, upon their oaths aforesaid do say: That the said Carl Horne, him the said Philip Friend, in manner and form aforesaid, unlawfully, feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did kill and murder, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Kansas.

The defendant, having been arraigned, and before pleading, by his counsel moved the Court to quash the indictment, because it did not show that the offence charged was committed within the jurisdiction of the Court, nor punishable therein.

Motion overruled and exceptions taken.

After the jury was sworn, the prosecution gave evidence tending to show that on or about the month of June, 1861, the defendant became a boarder at the house of Philip Friend,

the alleged murdered man; that Friend's family consisted of himself, his wife, and a son about five years of age; that sometime towards the last of the month of August, 1861, Friend was missing, and about ten days after, the remains of a human body were found under some hay near the dwelling of Friend; that up to the time at which Friend was missing, the most friendly relations had existed between the defendant, Friend, his wife and son; that defendant, about two days before the remains of the body were found, left the premises in company with the wife of Friend; went to the city of Leavenworth, and were there married. And evidence was also given of certain statements of defendant in relation to the whereabouts of Friend, and that the defendant and the wife of Friend went to the city of Elwood, Kansas, on their way East; that they were there arrested by the police officers of the city of Leavenworth, and brought back.

The defendant produced several witnesses who testified to the general good character of the defendant.

At the conclusion of the evidence the defendant's counsel requested the Court to instruct the jury as follows:

First. The jury cannot convict the defendant of murder in the second degree.

Second. The defendant is presumed to be innocent until his guilt as charged is established by legal evidence; (the law presumes innocence of the act done, and innocence of the guilty intent.)

Third. The hypothesis that the defendant committed the act charged, must exclude every reasonable hypothesis that it was committed by any other person.

Fourth. Before the jury can convict the defendant, they must be satisfied, from the evidence, that no other person could have and did possess the opportunity possessed by the defendant to commit the act.

Fifth. Before they can convict they must be satisfied, from the evidence, that no other person committed the act.

Carl Horne *v.* The State of Kansas.

Sixth. Under the statute, before a person can be convicted of murder in the first degree, express malice must be proved, to the satisfaction of the jury, beyond a reasonable doubt. In other words, the statute limits the signification of the term "malice aforethought" to what is known as express malice.

Seventh. The hypothesis of the defendant's guilt must be so fully established and so conclusive as to exclude any reasonable hypothesis of the defendant's innocence.

Eighth. If the prosecution have failed in establishing, beyond a reasonable doubt, any one fact material and necessary to be proved, they must find for defendant.

Ninth. The jury cannot convict the defendant under the indictment for murder in the first degree, unless they are satisfied, from the evidence, beyond a reasonable doubt, that the defendant wilfully, deliberately, premeditatedly and feloniously, and of his malice aforethought, killed Philip Friend.

Tenth. If the prosecution have failed to satisfy the minds of the jury upon each and every one of these points, then they cannot find the defendant guilty of murder in the first degree.

Eleventh. To convict of murder in the first degree, under the law of this State, the jury must be satisfied, from the evidence, that the defendant premeditated the murder—that he deliberated upon it beforehand.

Twelfth. If the jury find that Philip Friend came to his death from violence, inflicted by the defendant in the heat of passion and without deliberation or premeditation, they should not find the defendant guilty of murder in the first degree.

Thirteenth. Before the jury can find the defendant guilty of murder in the first degree, the evidence must reasonably exclude the hypothesis, that the cause of the death of the deceased was inflicted by the defendant, in the heat of passion and without premeditation, not in self-defense.

But the Court refused to charge as so requested upon the first and so much of the second as is included within brackets,

the third, fourth, fifth and sixth points as above mentioned, and exceptions were made.

The Court, after giving the seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, and so much of the second as is not included in brackets, proceeded to charge the jury as follows:

First. If the jury believe, from the evidence, that the facts in the case are all consistent with the supposition that the prisoner is guilty, and he can offer no resistance to that, except the character the prisoner has borne, and except the supposition that no man would be guilty of so atrocious a crime as that laid to the prisoner, they are *warranted* in returning a verdict of guilty.

Second. That circumstantial evidence is sufficient, as to any material fact in this case, upon which to predicate a verdict.

Third. That the woman and this defendant may both be guilty as principals in this murder.

Fourth. It is not necessary to prove the *corpus delicti* by direct and positive evidence; presumptive proof may be made in criminal as well as in civil cases.

Fifth. The Court also charged the jury verbally (as the Court claimed): "As to the definition of malice, deliberation and premeditation, defined the destinction between murder in the first degree, murder in the second degree and the several degrees of manslaughter, and instructed the jury that if the evidence warranted it, the defendant, although charged in the indictment with murder in the first degree, could be found guilty in the second degree, or any one of the degrees of manslaughter, because the indictment, in construction of the law, charged as well murder in the second degree, and the several grades of manslaughter; that before the jury could convict the defendant of murder in the first degree, the evidence must satisfy them, beyond the existence of a reasonable doubt, that Philip Friend was dead; that he came to his death by violence inflicted by the defendant; that he did it wilfully,

Carl Horne *v*. The State of Kansas.

that is, intentionally; that he did it deliberately; that he did it premeditatedly, that is, that he reflected upon it beforehand —deliberation and premeditation being almost synonymous— that he did it feloniously, that is, unlawfully, and that he did it maliciously."

And the Court then defined the meaning of malice and instructed the jury how it could be proved. The Court charged the jury:

"That each and every one of these elements were necessary to constitute murder in the first degree, and that it devolved upon the prosecution to make out each element of the crime, to the satisfaction of the jury, beyond a reasonable doubt."

In relation to malice, the Court charged the jury:

"That malice was either express or implied. That express malice was evidenced by threats, lying in wait, former grudges, and the like. That malice was implied in law, from the circumstances of the killing, the use of weapons, &c."

Each of these charges were excepted to.

Sixth. The Court also charged the jury (reading the charge of Judge Shaw in the case of the *Commonwealth vs. Webster*, *5th Cush.*), in which, among other things, he said:

"The distinction, then, between direct and circumstantial evidence is this: Direct or positive evidence is, when a witness can be called to testify to the precise fact which is the subject of the issue on trial; that is, in a case of homicide, that the party accused did cause the death of the deceased, whatever may be the kind or force of the evidence, this is the fact to be proved.    *    *    *

It is therefore necessary to use all other modes of evidence besides that of direct testimony, provided such proofs may be relied on as leading to safe and satisfactory conclusions; and, thanks to a beneficent Providence, the laws of nature, and the relations of things to each other, are so linked and combined together that a medium of proof is often thereby furnished, leading to inferences and conclusions as strong as those arising

from direct testimony.  On this subject I will once more ask attention to a remark in the work already cited.  (*East Pleas of the Crown, chap.* 5, § 11):·

"'Perhaps,' he says, 'strong circumstantial evidence, in cases of crimes like this, committed for the most part in secret, is the most satisfactory of any from whence to draw conclusions of guilt; for men may be seduced to perjury by many bad motives, to which the secret nature of the offense may sometimes afford a temptation; but it can scarcely happen that many circumstances, especially if they be such over which the accuser could have no control, forming together the links of a transaction, should all unfortunately concur to fix the presumption of guilt on an individual, and yet such a conclusion be erroneous.'      *      *      *

"In a case of circumstantial evidence, where no witness can testify directly to the fact to be proved, it is arrived at by a series of other facts which, by experience, have been found so associated with the fact in question, that, in the relation of cause and effect, they lead to a satisfactory and certain conclusion.    *    *    *    Circumstantial evidence is founded on experience and observed facts and coincidences, establishing a connection between the known and proved facts and the facts sought to be proved.

"From this view, it is manifest that great care and caution ought to be used in drawing inferences from facts proved; it must be a fair and natural, and not a forced or artificial, conclusion.    *    *    *

"The common law appeals to the plain dictates of common experience and sound judgment, and the inference to be drawn from the facts must be a reasonable and natural one, and, to a moral certainty, a certain one; it is not sufficient that it is probable only; it must be reasonably and morally certain. The next consideration is that each fact which is necessary to the conclusion, must be distinctly and independently proved by competent evidence; I say, every fact necessary to the

Carl Horne *v.* The State of Kansas.

conclusion, because it may and often does happen that, in making out a case on circumstantial evidence, many facts are given in evidence, not because they are necessary to the conclusion sought to be proved, but to show that they are consistent with it and not repugnant, and go to rebut any contrary presumption.    *    *    *

"The ordinary feelings, passions and propensities under which parties act, are facts known by observation and experience; and they are so uniform in their operation, that a conclusion may safely be drawn that, if a person acts in a peculiar manner, he does so under the influence of a particular motive. Indeed, this is the only mode in which a large class of crimes can be proved. I mean crimes which consist, not merely in an act done, but in the motive and intent with which they are done. But this intent is a secret of the heart, which can only be directly known to the searcher of all hearts, and if the accused makes no declaration on the subject, and chooses to keep his own secret, which he is likely to do, if his purposes are criminal. Such criminal intent may be inferred from his conduct and external acts.

"A few other general remarks occur to me upon this subject, which I will submit to your consideration. When, for instance, probable proof is brought of a state of facts, tending to criminate the accused, the absence of evidence tending to a contrary conclusion is to be considered, though not alone entitled to much weight, because the burden of proof lies on the accuser to make out the whole case by substantive evidence. But when pretty stringent proof of circumstances is produced, tending to support the charge, and it is apparent that the accused is so situated that he could offer evidence of all the facts and circumstances as they existed, and show, if such was the truth, that the suspicious circumstances can be accounted for consistently with his innocence, and he fails to offer such proof, the natural conclusion is that the proof, if produced, instead of rebutting, would tend to sustain the charge.

4

"But this is to be cautiously applied, and only in cases where it is manifest that proofs are in the power of the accused not accessible to the prosecution. To the same head may be referred all attempts on the part of the accused to suppress evidence, to suggest false and deceptive explanation, and to cast suspicion without just cause, on other persons, all or any of which tend somewhat to prove consciousness of guilt, and, when proved, to exert an influence against the accused. But this consideration is not to be pressed too urgently, because an innocent man, when placed by circumstances, in a condition of suspicion and danger, may resort to deception, in the hope of avoiding the force of such proofs. Inferences drawn from independent sources, different from each other, but tending to the same conclusion, not only support each other, but do so with an increased weight.     *     *     *

"I will conclude what I have to say on this subject by a reference to a few obvious and well established rules, suggested by experience, to be applied to the reception and effect of circumstantial evidence. The first is, that the several circumstances upon which the conclusion depends, must be fully established by proof; they are facts from which the main facts are to be inferred, and they are to be proved by competent evidence, and by the same weight and force of evidence, as if each one were itself the main fact in issue. Under this rule, every circumstance relied upon as material, is to be brought to the test of strict proof, and great care is to be taken in guarding against feigned and pretended circumstances, which may be designedly contrived and managed so as to create or direct suspicion and prevent the discovery of the truth; these, by care and vigilence, may generally be detected, because things are so ordered by Providence—events and incidents, all so linked together—that real occurrences leave behind them vestiges by which, if carefully followed, the true character of the occurrences may be discovered.     *     *     *

"The next rule to which I ask attention is, that all the facts proved must be consistent with each other, and with the

Carl Horne *v*. The State of Kansas.

main fact sought to be proved. When a fact has occurred, with a series of circumstances preceding, accompanying and following it, we know that these must all have been once consistent with each other, otherwise the fact would not have been possible. Therefore, if any one fact necessary to the conclusion is wholly inconsistent with the hypothesis of the guilt of the accused, it breaks the chain of circumstantial evidence, upon which the inference depends, and, however plausible or apparently conclusive the other circumstances may be, the charge must fail. Then what is reasonable doubt is as often used, probably pretty well understood, but not easily defined; it is not mere possible doubt, because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt; it is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge. The burden of proof is upon the prosecution; all the presumptions of law, independent of evidence, are in favor of innocence; and every person is presumed to be innocent until he is proved guilty; if, upon such proof, there is reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal. For it is not sufficient to establish a probability, though a strong one arising from the doctrine of chances, that the fact charged is more likely to be true than otherwise; but the evidence must establish the truth of the fact to a reasonable and moral certainty, that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it. This we take to be proof beyond reasonable doubt; because, if the law, which mostly depends upon considerations of a moral nature, should go further than this and require absolute certainty, it would exclude circumstantial evidence altogether."

This charge was also excepted to.

At the same term the defendant moved, in arrest of judgment, on the following grounds:

First. That the grand jury who found the indictment had no legal authority to inquire into the offense charged, by reason of its not being within the jurisdiction of the Court.

Second. That the facts stated do not constitute a public offense.

Motion overruled and the defendant excepted.

At the same term the defendant moved for a new trial on the following grounds:

First. That the Court admitted illegal testimony on the trial.

Second. Newly discovered evidence.

Third. Error of the Court in excluding evidence offered at the trial.

Fourth. The jury separated without leave of Court, after retiring to deliberate upon their verdict.

Fifth. The Court misdirected the jury in a material matter of law.

Sixth. The Court erred in refusing to give the instructions asked by defendant.

Seventh. That the verdict is contrary to law.

Eighth. That the verdict is contrary to the evidence.

Which motion was overruled by the Court, and the defendant excepted.

And thereupon the Court entered judgment on the verdict, and sentenced the prisoner, and the defendant excepted.

*Adams, Crozier & Ludlum,* and *W. P. Gambell,* for appellant.

I. The Court erred in overruling the motion to quash the indictment.

1. For aught that appears in the indictment, the offense might have been committed on the lands belonging to the Delaware Indians.

2. It may have been committed on the military reservation of Fort Leavenworth, which is under the sole and exclusive jurisdiction of the United States. (*Con. U. S. art.* 1, § 8.)

II. The Court erred in refusing to allow the defendant's discharge from the army of the United States, and certificate of good character indorsed thereon, to be given in evidence to the jury.

    1. It was competent evidence to show defendant's good character.

    2. It was competent evidence to show at what time he was discharged from the army of the United States. (*Brightly's Digest, p.* 74, § 184.)

    3. In one aspect of the case, it was important to know at what time Horne came to the house of Philip Friend.

III. The Court erred in refusing to charge the jury: That "the defendant is presumed to be innocent until his guilt, as charged, is established by legal evidence; the law presumes innocence of the act done, and innocence of the guilty intent." (2 *Leading Criminal Cases, p.* 503, *note* 536; *Com. vs. McKie,* 1 *Lead. Crim. cases, p.* 347; 1 *Gray, p.* 61; 3 *Gray, p.* 463.)

IV. The Court erred in refusing to charge the jury: That the hypothesis that the defendant committed the act charged, must exclude every reasonable hypothesis that it was committed by any other person.

V. The Court erred in refusing to charge the jury: That "before the jury can convict the defendant, they must be satisfied, from the evidence, that no other person could have or did possess the opportunity possessed by the defendant to commit the act."

    1. If no other person had an opportunity to commit the act, that fact might be used to demonstrate that no other person but the accused could have committed the offense. On the other hand, if another person did possess such opportunity, that fact might be used to demonstrate that

some person other than the accused committed the offense. (*Burrill Circl. Ev.*, *pp.* 369, 370, 371, 549.)

2. The jury must have been misled by the Court in refusing to give this charge; it was, in effect, saying to the jury that the proposition contained in the instruction asked, was not proper to be considered by them in determining the question of the defendant's guilt.

VI. The Court erred in refusing to charged the jury: That "under the statute, before a person can be convicted of murder in the first degree, express malice must ʰe proved to the satisfaction of the jury, beyond a reasonable doubt. In other words, the statute limits the signification of the term, 'malice aforethought,' to what is known as express malice."

1. The statute provides: "Every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, burglary or other felony, shall be deemed murder in the first degree." (*Laws of* 1859, *chap.* 25, § 1, *p.* 231.)

2. The common law definition of murder is still retained in our statute. It regards the offense as one already ascertained and defined, and divides it into degrees by providing that all murder, which shall be perpetrated by means of poison, or lying in wait, or any other kind of willful, deliberate and premeditated killing, &c., shall be deemed murder in the first degree, and that all other kinds of murder shall be deemed murder in the second degree, and requires the jury, in case of a trial, to find, by their verdict, the degree of the crime. (*People vs. Potter*, 5 *Mich.* 1; *People vs. Sullivan*, 1 *Parker Cr. R.*, *p.* 349; *People vs. Austin*, *P.* 154; *Wharton Am. Law of Hom.*, *p.* 473.)

3. Our statute is almost a literal copy of the Pennsylvania, Michigan, New York and Tennessee statutes. This

section of the statute was passed upon by the Supreme Court of the State of New York, in the case of the *People vs. Enoch* (13 *Wend.* 159), and Chief Justice Nelson held it to be confined to express malice, or malice aforethought, according to its sense, as originally used.

(*White's case,* 24 *Wend., pp.* 558, 569, 581.) In this case, the Court held that the words, premeditated design, as used in the New York statute, limit the signification of malice aforethought to express malice.

In *Sullivan vs. People* (1 *Parker* 352), the Court say: The very requirement that the design shall be thought of and meditated before the act shall be committed, which is the cause of death, admits that there is an interval between the design or intention and the commission of the act. We have no right to strike out so material a part of the word as this, which gives peculiar force to the ordinary meaning of the rest of the word. This interpretation of the word also corresponds with the express view of the revisers, which seemed to have been to confine this part of the definition of murder to what was frequently called cases of express malice.

In the case of the *People vs. Potter,* the Supreme Court of Michigan say: "The charge of the Court, we think, had a tendency to mislead the jury. The proposition submitted to them, and which was to be their guide in ascertaining the degree of the crime, was, whether there was proof of malice aforethought or not. Now, it is true, as charged, that, if the act of killing was proved, the presumption of law is, that it was done with malice aforethought; but this rule only obtains when there is an entire absence of qualifying or explanatory evidence involved in or deducible from the manner of the killing. But malice aforethought is as much an essential ingredient of murder in the second degree, as in that of the first. Without this, the killing would be only manslaughter, if criminal at all. Now, malice aforethought is either express or implied, and there can be no case of murder in the first

degree, except when committed in the perpetration or attempt to perpetrate arson, rape, robbery or burglary, when there does not exist *express* malice; while, in case of murder in the second degree, the malice is generally, if not universally, *implied.*"

VII. The Court erred in charging the jury: That, if the jury believe, from the evidence, that the facts in the case are all consistent with the supposition that the prisoner is guilty, and he can offer no resistence to that, except the character the prisoner has borne, and except the supposition that no man would be guilty of so atrocious a crime as that laid to the prisoner, they are warranted in returning a verdict of guilty.

    1. This was a most outrageous charge. The jury were told in substance that they might *suppose* the defendant guilty, and then if they believed all the facts in the case were consistent with that *supposition*, they would be *warranted* in finding him guilty, unless he could prove his innocence.

    2. But the jury had nothing to do with suppositions; the prosecution was bound to *prove* the defendant guilty; and the jury were to be satisfied, from the evidence, that each and every fact proved was consistent with the defendant's guilt.

    3. But the Court went still further, and told the jury, not simply that they *might* convict upon this supposition, but that they were *warranted* in doing so; that is, that they were *bound* to convict.

    4. If this is the law of the land, then no man, however innocent, can escape conviction of a crime when a jury may take it into their heads to raise a supposition of his guilt, and a court can be found to tell them, as a matter of law, that they are "*warranted*" in returning a verdict of guilty on that supposition.

VIII. The Court erred in charging the jury: That the woman and this defendant might both be guilty as principals in this murder.

1. The jury had nothing to do with the question of the guilt or innocence of the woman.

2. The Court had no right to tell the jury that a murder *had been committed.* The Court tells the jury substantially, in this charge, that the defendant has committed the crime of murder, and that the woman may be guilty s a principal in that murder.

X. The Court erred in charging the jury as follows: "But when pretty stringent proof of circumstances is produced, tending to support the charge, and it is apparent that the accused is so situated that he could offer evidence of all the facts and circumstances as they existed, and show, if such was the tru ,, tnat the suspicious circumstances can be accounted for consistently with his innocence, and he fails to offer such proof, the natural conclusion is, that the proof, if produced, instead of rebutting, would tend to sustain the charge."

1. This is a new principle of criminal law, and is not sanctioned by a single respectable authority. The common law was that every man was presumed to be innocent until his guilt was established by competent evidence, beyond a reasonable doubt. And this has been made the law of this State by positive enactment. (*Laws of* 1859, *p.* 212, § 207.)

2. In this charge, the Judge substantially told the jury that when the prosecution had offered proof tending to support the charge, and it appeared to the jury that the defendant omitted to avail himself of evidence within his reach, by which he might have repelled that which was offered against him, his failure to do so raised a strong presumption of his guilt. This is not law and never was. (1 *Leading Crim. Cases*, 347 *and note; Com. vs. McKie.*)

3. The jury must have been misled by this charge, for it clearly imported that the burden of proving innocence devolved upon the prisoner, after a *prima facie* case had been made out against him. It imported even more than

this.   The Court told the jury that when pretty stringent proof of circumstances, *tending to support* the charge, had been given, and the defendant did not prove his innocence, they were *warranted* in finding him guilty.   The portion of the charge of the Court we are now reviewing, was extracted bodily from the opinion of Chief Justice Shaw, in *Com. vs. Webster* (5 *Cush.*).   Our first authority under this point will be a decision of the same Court, rendered at a much later date.

(*Com. vs. McKie*, 1 *Lead. Crim. Cases* 347; 1 *Gray* 61.) In this case the question arose whether the burden of proof ever shifts in criminal cases.   The Court say: "However the rule may be, in cases where the defendant sets up, in answer to a criminal charge, some separate, distinct and independent fact or series of facts, not immediately connected with and growing out of the transaction on which the criminal charge is founded, there can be no doubt that, in a case like the present, the burden of proof remains on the government, throughout, to satisfy the jury of the guilt of the defendant."

(*Doty vs. The State*, 7 *Blackford* 527.)   In this case it was held that it was manifestly erroneous for a judge to instruct the jury that, "if a defendant omitted to avail himself of evidence within his reach, by which he might have repelled that which was offered to his prejudice, his failure to do so supplied a a strong presumption of his guilt."

(*Swallow vs. The State*, 22 *Ala.* 20.)   In this case it was held that the jury were not bond ;to find a verdict of guilty upon a *prima facie* case, even if no rebutting evidence was offered by the defendant.

(*United States vs. McClure*, 7 *Bost. Law Repor.* 439.)   The defendant was indicted for an assault.   He admitted the blow, but claimed that it was accidental, and that the prosecution must satisfy the jury that it was intentional.   The Court held that the government must prove the criminal intent with which the blow was given, as well as the blow itself.

(*Com. vs. Hawkins*, 3 *Gray* 460.) In this case it was held that when the fact of the killing was conceded, this alone would not authorize a conviction of murder. It would still be necessary to prove malice, to the satisfaction of the jury, beyond a reasonable doubt.

4. In criminal cases, the burden of proof never shifts, so long as the defendant grounds his defense on the denial of any essential allegation in the indictment. (1 *Lead. Crim. Cases*, *p.* 359; *Com. vs. Hawkins*, 3 *Gray* 463; *Com. vs. McKie*, 1 *Gray* 61; *Com. vs. Kimball*, 24 *Pick.* 373; *Com. vs. Dana*, 2 *Mitcalf* 340, 12 *Ind.* 670.)

X. The Court erred in overruling the motion for a new trial.

1. It was shown that the jury separated after retiring to deliberate upon their verdict. There were persons about by whom the juror might have been influenced.

(*Eastwood vs. The People*, 3 *Parker Crim. Cases*, *p.* 25.) In this case it was held by the Supreme Court of the State of New York, that a separation of the jury, for however short a time, will be fatal to a verdict against the prisoner, unless it be shown *affirmatively* on the part of the prosecution, by the clearest evidence, and beyond a reasonable doubt, that no injury to the prisoner *could have occurred*, in consequence of the separation.

(*People vs. McKay*, 18 *John.* 212.) In this case, Chief Justice Spencer cites, with approval, a case of a woman of color, who was indicted, tried for murder, and found guilty. The jury had separated after agreeing on a verdict, and before they came into Court; and on that ground alone a new trial was granted.

(*Com. vs. McCall*, 1 *Virginia* 271.) In this case it was held that the mere separation of the jury in a capital case was sufficient to vitiate the verdict.

(*Com. vs. Roby*, 2 *Pick.* 496.) Chief Justice Shaw says: "The result of the authorities is, that when there is an irregularity

which may effect the impartiality of the proceedings, as when meat and drink and other refreshments have been furnished by a party, or when the jury have been exposed to the effect of such influence, as when they have improperly seperated themselves, or have had communication not authorized; then, inasmuch as there can be no certainty that the verdict has not been improperly influenced, the proper and appropriate mode of correction and relief is by undoing what has been improperly and may have been corruptly done."

(*The State vs. Prescott*, 7 *N. H.* 287.) In this case the jury had separated. Parker J. says: "When there has been an improper separation of the jury during the trial, if the verdict is against the prisoner, he is entitled to the benefit of a *presumption* that the irregularity has been prejudicial to him, and that it is incumbent upon the prosecution to show, and that beyond a reasonable doubt, that the prisoner has suffered no injury by the departure from the forms ordinarily pursued in the administration of justice."

. (*McLain vs. The State*, 10 *Yeager* 241.) A portion of the jury had separated from their fellows, and remained absent fifteen or twenty minutes. The Court set aside the verdict, and held that it was not necessary to show *any actual tampering or conversation* on the subject of the trial with the jurymen.

(*Overbee vs. The Com.*, 1 *Robinson— Va.—*756.) In this case it appeared that the Court had given five of the jurors leave to retire for a few minutes, attended by an officer, and a sixth juror started after them unobserved by the Court. This juror, not returning with the other five, an officer was immediately sent to bring him in, which he did about a *minute* afterwards. There was a crowd about the doors, but the juror testified that he held no conversation with any one, but the Court set aside the verdict.

(*Hines vs. The State*, 8 *Humphrey* 297.) In this case one of the jurors separated from the others ten or fifteen minutes. He testified that his absence was owing to indisposition, and

that he had no communication with any one; yet the Court granted a new trial on that ground.

(*McCann vs. The State*, 9 *Smedes & Marsh* 465.) The Supreme Court of Mississippi held, upon an indictment for murder, that when any portion of the jury have seperated from the others, and had intercourse or *opportunity of intercourse* with third persons, and it shall not affirmatively appear that no effect was produced upon the jury by such exposure, and the *possibility* of undue influence be not *wholly negatived*, the verdict will be set aside. (*Boles vs. The State*, 13 *Smedes & Marsh* 398; *Peiffer vs. The Com.*, 3 *Harris* 468; *Wesley vs. The State*, 2 *Humphrey* 502.)

2. It will be contended that the affidavit of the bailiff showed that the juror was not improperly influenced. But this is not enough. The fact of the separation having been proved, the State was bound to show beyond a reasonable doubt that there was *no possibility* of his being improperly influence. (*See authorities cited above.*)

3. The affidavit of the bailiff was not sufficient for the purpose. He was equally guilty of a violation of his duty.

In *Commonwealth vs. McCall* (*supra*) the Court say: "From the mode in which collusion and tampering is generally carried on, such circumstances is generally known to no person except the one tampering and the one tampered with, or the person between whom a conversation might be held, which might influence the verdict.

"If you question either of these persons on the subject, he must criminate or declare himself innocent, and you lay before him an inducement not to give correct testimony."

(*Hines vs. The State—supra.*) The affidavit read was that of the offending juror. But the Court held: "This affidavit, it is true, *excludes the possibility* that he was tampered with, if his testimony shall be deemed sufficient to establish the fact. But we do not think this affidavit can be relied on as proof of the innocence of his conduct."

4. The jury had no right to separate either with or without the consent of the Court.

(*Laws of* 1859, *p.* 213, § 216.) By this statute, the officer is to be sworn to keep the jury *together* in some private and convenient place, &c.

At the common law, separation in capital cases was not allowed, and the common law*j* s the rule of decision in this State, when not changed by tatute. And at the common law, the *mere separation* of the jury was such an error as was regarded fatal upon a proceeding on a writ of error after judgment. (*Bacon's Abr. tit. Juries., G.*)

5. The verdict is contrary to law. (Upon this point, see authorities above cited, in reference to the charges of the Court to the jury.)

6. The verdict is against the evidence. In all the evidence, there was not one word that showed any malice, deliberation or premeditation.

XI. The Court erred in overruling the motion in arrest of judgment.

1. The description of the *place* of the wound is not sufficient. (2 *Hales P. C.* 185, 186.)

2. Neither the number, size, depth nor width of the wounds are given. The indictment charges that the defendant "did strike, thrust and penetrate, &c.," giving to the said Philip Friend "several mortal wounds." This language charges, then, that an incised wound was given. And all the authorities, both in England and America, hold that while it is not necessary to so particularly describe a bruised wound, it is indispensable to describe the length, depth and width of an incised wound. (3 *Chitty, C. L.* 734; 1 *East. P. C.* 342; 2 *Hale, P. C.* 185, 186; *Barb. Crim. L.* 54; 1 *Lead. Crim. Cases, p.* 58 *and cases cited in the notes; Com. vs. Chapman, Mon. L. R., v.* 7, *p.* 155, *decided in* 1854; *Train & Heard's Prec. of Indict., p.* 248, *and cases cited in note* 4.)

Carl Horne *v*. The State of Kansas.

*Thomas P. Fenlon*, County Attorney, for appellee.

*F. P. Fitzwilliam*, of counsel.

The objection to the several rulings of the Court below, are in their order as follows:

I. The Court refused to quash the indictment. The motion to quash was based upon the following reasons: "For that it did not appear from said indictment that the offense charged was committed within the jurisdiction of the Court." The venue of the indictment itself is: "The State of Kansas, Leavenworth County;" and in the indictment the defendant is charged with having, "at the county of Leavenworth aforesaid, and within the jurisdiction of this Court, killed," &c., &c.

By the authorities, from almost every State in the Union, the above venue is sufficiently charged. It is not thought necessary here to cite the numerous cases adjudicated on this point; we will content ourselves by referring the Court to section fifteen, Criminal Procedure, laws of Kansas 1859, page one hundred and eighty-seven, and sections twenty-two, eighty-seven and ninety-five, which, in the order they have been quoted, are as follows:

SEC. 15. Offenses committed against the laws of this State shall be punished in the county in which the offense is committed, except as may be otherwise provided by law.

SEC. 22. An accessory, before or after the fact, may be punished in the county where he committed the offense, or in the county where the principal offense was committed.

SEC. 89. The indictment must contain: First. The title of the action, specifying the name of the court to which the indictment or affidavit is presented, and the names of the parties. Second. A statement of the facts constituting the offense, in plain and concise language, without repetition.

SEC. 95. The indictment is sufficient if it can be understood therefrom: First. That the indictment was found by the grand jury of the county in which the court is held. Second. That

the defendant is named or described in the indictment or as a person whose name is unknown to the grand jurors, or in an information to the prosecuting attorney. Third. That the offense was committed within the jurisdiction of the court, or is triable therein. Fourth. That the offense charged is clearly set forth, in plain and concise language, without repetition, and Fifth. That the offense charged is stated with such a degree of certainty that the court may pronounce judgment upon a conviction, according to the right of the case.

From our own statutes, then, we are convinced that the Court below properly refused to quash the indictment for the reason assigned by defendant.

II. The Court below refused to arrest the judgment. The reasons filed for which the Court was asked to arrest the judgment, are as follows:

1. "The grand jury who found the indictment had no legal authority to inquire into the offense charged, for the reason of its ¦not being within the jurisdiction of the Court." We have already sufficiently shown that the crime was charged to have been committed within the jurisdiction of the Court.

2. "The facts stated in the indictment do not constitute a public offense." The objection taken under this ground is, that the indictment does not describe the *length, breadth* and *depth* of the wounds. It is not necessary, under the criminal practice of the present day, to do so. (*See vol.* 1, *Lead. Crim. Cases, Rex vs. Mosley & Morrel,* 58 *Wh. Crim. Law,* § 1069; *Stone vs. The* ¦*State,* 12 *Scammon* 326; *Lazier vs. Com.,* 10 *Grattin* 708; 1 *Russell on Crimes* 558; *Wharton, Law Homicide* 272, 273, 274; 1 *Arch. Crim. Pr. and Pl.* 887.) In Massachusetts, where the wound which caused the death was described in the indictment as having been inflicted upon the *back side of the head of the deceased with an ax,* it was held that the *length, breadth* and *depth* of the *wound* need not

Carl Horne *v*. The State of Kansas.

be alleged. (*Com. vs. Chapman*, 11 *Cushing* 422; *State vs. Conley*, 39 *Maine* 78; *Dias vs. State*, 7 *Blackf.* 25; *Lazier vs. Com.*, 10 *Grattin* 798; *see also stats. of Kan.*, § 95 *Crim. Proc.*, *and* § 96 *sub.* 7 *of Crim. Proc.*) All the *material* and *substantial* averments are in the indictment. It is not essentially necessary to allege anything which the State is not bound to prove; and it cannot be contended that the State is bound to prove how many inches *long*, or *deep*, or *wide*, a wound may be. We think, therefore, upon these two grounds the Court below properly refused to arrest the judgment. (§ 276 *Crim. Proc.*)

III. The Court below refused to grant a new trial. The motion for a new trial was based upon the following grounds:

1. The Court admitted illegal testimony. There were no objections taken by defendant's counsel at the trial below to any testimony, and this Court cannot now review the question. The record shows no objections as to the testimony offered by the State, and no exceptions to the ruling of the Court on this subject; and if illegal testimony were permitted to go to the jury without objection, the illegality is waived and a new trial will not be granted. (*Stone vs. State*, 4 *Humphrey* 27; *State vs. Gordon*, 1 *R. I. R.* 179; *State vs. Camp*, 23 *V.* 557; *Bishop vs. State*, 9 *Ga.*; 1 *Arch.*, *C. Pr. and Pl.* 639.)

2. Since the trial of the cause, defendant has discovered new evidence material to the cause which he could not, with reasonable diligence, have produced before or at the trial. This ground was not pressed by defendant's counsel.

3. The jury separated without leave of Court after retiring to deliberate upon their verdict. We refer the Court to the affidavit filed by the State, to show that the denial to grant a new trial for this reason, was not error in the Judge. (*Wh. Cr. L.*, §§ 3111 *to* 3119 *inclusive, and*

3130, 3135, 3137; *People vs. Reynolds,* 2 *Mich.* 422.) "Where, after a verdict of guilty of murder, it appeared that the jury retired from the court room on Thursday at six o'clock P. M., and rendered their verdict on Saturday at ten o'clock A. M.; that while out, the members of the jury separated at various times to obey the calls of nature; that each one separated himself from the others more than once for that purpose, and one of them as often as six times; that when they did this, they went out one at a time, under charge of an officer, and during such absence the other jurors remained together in the jury room, with the door locked; that they went about fifty yards from the court house, and returned as soon as practicable, holding no intercourse with any one; that one of the jurors separated himself from his fellows, and visited a drug store, about one hundred and fifty yards from the jury room, for the purpose of procuring medicine, being sick; that he went under the charge of an officer, and held no conversation except with the keeper of the drug store, who asked him if they had agreed on their verdict, to which he replied they had not; that this store was in the most public place in the town; that another juror separated himself from his fellows and stood at the outside of the jury room, near the door, which was closed, and conversed privately for ten or fifteen minutes with a third person, but what was said did not appear, it was held that it was discretionary with the presiding judge whether or not to grant a new trial." (*Rowen vs. The State,* 11 *Humph.* 491, *cited in Arch. C. Pr. and Pl.* 636, *note g.*) Hence it is a matter of discretion with the judge, who is conversant with the facts and circumstances under which a separation occurred, whether a new trial will be granted; and it will not be done unless it appear affirmatively that the prisoner was prejudiced thereby. The rule laid down in *Graham & Waterman on New Trials*

(*vol.* 2, *pp.* 593, 594,) is thus: "However improper the conduct of a juror may have been, yet if it does not appear that it was occasioned by the prevailing party, or any one in his behalf, if it do not create any improper bias upon the mind of the juror, and the court cannot see that it had, or might have had, an effect unfavorable to the party moving for a new trial, the verdict ought not to be set aside." It has often been decided that the granting or refusing a new trial is a matter of discretion, and therefore not the subject of error. (6 *Conn.* 59; 6 *Cranch* 206; 1 *U. S. Cond. R.* 260 *and notes;* 5 *Cranch* 11; 20 *How. S. C. R.* 29.)

4. The Court misdirected the jury in a material matter of law.

5. The Court erred in refusing to charge the jury as requested by defendant's counsel.

6. The verdict is contrary to law.

7. The verdict is contrary to and against the evidence.

8. The Court erred in refusing to quash. We are unable to see any error in the charge of the Court to the jury. The charge is a plain, succinct exposition of the law of murder by the statutes of Kansas. To sustain the various views of the Court, we refer to *Whar. L. Hom.,* 38, 39, 48, 34, 384, 385; 9 *Met.* 93, *Com. vs. York; Mitchell vs. State,* 5 *Yeager* 340; 2 *Lead. Crim. Cases* 504; 1 *Russell* 483; *People vs. McCloid,* 1 *Hill* 177; 4 *Blackstone* 201. As to the definition of the term *willful,* we refer to *Whar. L. Hom.* 369; *Com. vs. Mulatto Bob,* 4 *Dallas* 195; *Com. vs. O'Harra,* 7 *Smith's Laws* 694; *Whar. L. Hom.* 369, 384, 385; *People vs. Austin,* 1 *Parker C. R.* 154; *Com. vs. York,* 9 *Met.* 93; *Shoemaker vs. State,* 12 *Ohio* 43; 18 *Mo. R.* 435, 419; 13 *Mo. R.* 382; 2 *Lead. Cases* 536. No particular length of time is necessary to *deliberate,* in order to constitute the killing murder in the first degree. (*Whitefort vs. Com.,* 6 *Rand.*

721; *White's case, N. C.,* 3 *Grattin* 584; *Jones' case,* 1 *Leigh* 597; *Donnelly vs. State,* 2 *Dutcher* 463, 601; *Anthony vs. The State,* 10 *Yeager* 551; *Clark vs. State,* 8 *Humph.* 671.) As to *premeditation—Dale's case,* 10 *Yeager* 551; *Whar. L. Hom.* 372, 373, 382. See charge of Judge Rush in the case of *Com. vs. R. Smith; Sam. Carson, cited in Wh: L. Hom.* 413.

V. The Court did not err in refusing to charge the jury as requested by defendant's counsel.

Conceding, for the sake of the argument, that all the instructions asked were good law, the Court is not compelled to give each and every instruction asked, if all the law governing the case was given in the general condensed and usual form of charges. It would be no more than a repetition of what had been already given, and the law does not compel the courts to instruct the jury as often as counsel may request. (3 *Barr* 294; *Munden Bank vs. Lutty,* 1 *S. & R.* 220; 13 *Mo. R.* 465, 600; 18 *Mo. R.* 93.)

VI. Nor is the verdict contrary to the law. The statute makes any unlawful, willful, deliberate and premeditated killing of a human being, murder in the first degree. From the facts in evidence, the jury must have found that the defendant did so kill Philip Friend. If so, the lawful and proper verdict was murder in the first degree.

VII. Nor is the verdict contrary to or against the evidence. "It may be stated as a general rule that when the judge who presided at the trial approves of the verdict, the appellate court will interfere with great reluctance." (3 *Graham & Waterman on New Trials,* 1218.)

In *Hill's case* (2 *Grattin* 594), which was on indictment for murder, upon an application to the General Court for writ of error, Duncan, Justice, delivering the opinion of the Court, said: "When the jury and the Judge who tried the cause in the Court below concur in the weight and influence to be given to the evidence, it is an abuse of the appellate power of this

Court to set aside a verdict and judgment, because the Judges of this Court, from the evidence as written down, would not have concurred in the verdict." The same opinion is expressed in *McCune's case*, 2 *Robinson* 761; *Cottrell's case, ibid; Bull's case*, 8 *Leigh* 726; *Grayson's case*, 6 *Gratt.* 712; 1 *Arch. C. Pl. & Pr.* 663, *notes*. In criminal cases the presumption is in favor of the verdict. (*See authorities cited in* 1 *Arch. C. Pl. & Pr.* 663, *note b.*)

The evidence, if examined, would, however, fully sustain the verdict of the jury. But we contend the whole of the evidence should not be before this Court, nor should it be reviewed in determining the correctness of the judgment of the Court below on the verdict returned by the jury, the statute providing that merely so much of the evidence as is necessary to understand the point of law raised shall be certified to the Supreme Court. (§§ 300, 302, *Code Civ. Proc., Laws* 1859; 6 *Mum.* 125; *People vs. Abigal Stockham*, 1 *Parker C. R.* 424; 1 *Arch. C. Pl. & Pr.* 665, *note g*; § 188 *Crim. Proc.*)

In the case of *Richard House vs. Andrew Elliott* (6 *Ohio S. R.* 497), the syllabus is as follows: "Section two hundred and ninety of the code permits a bill of exceptions to be taken to any decision of the Court upon a *matter of law*, and to become part of the record, but there is no provision made, nor authority given in the statute for excepting to the opinion of the Court on a motion for a new trial, predicated on the ground that the verdict is against the weight of evidence. The ruling of the Court below on such a motion will not be reviewed on petition in error; nor will the facts on which the verdict was rendered be examined by this Court in order to determine whether the verdict was sustained by the proof."

A bill of exceptions removes, not the merits of the cause, but only the isolated point specially pointed out. (*Houston vs. Wickerman*, 8 *W*. 521.)

The defendant's counsel offered in evidence the certificate of Horne's discharge from the service of the United States as

a soldier, which was objected to by the States attorney and objection sustained by the Court, and an exception taken by the defendant to the ruling of the Court.    There was no error in the Court excluding the certificate.

If the certificate was offered to prove the character of Horne, it was inadmissible, for the reason that it would not show his general character in the community where he lived, nor that the party signing the certificate knew his character.

After a witness states affirmatively that he knows the general reputation of the defendant, then the further question should be asked, "What is the defendant's general character?" relating to the charge in the issue.    (1 *Green. Ev.* 635; 1 *Wh. C. L.* § 814.)

If the Court had permitted this certificate to go in evidence to the jury, the State would have been deprived of the right to cross examine as to the knowledge of the witness, and the right of the jury to judge of the credibility of the party so testifying infringed.    And it would have the force of a deposition, without being obtained according to sections one hundred and forty-six and seven, Criminal Procedure, Laws 1859.

We hold, then, from the view taken of this case, that the indictment is good; that the motion to *quash,* and in *arrest of judgment,* was properly overruled by the Court; that there was no error in the Court in refusing to grant a *new trial,* and that this Court should affirm the judgment of the Court below.

By the Court, KINGMAN, J.    At the November term of the District Court of Leavenworth county, Carl Horne was indicted and tried for the murder of Philip Friend, and was found guilty of murder in the first degree.    From the judgment of the Court on that verdict, the accused has brought his case to this Court by appeal.

The errors alleged are set forth in the motion made for a new trial in the Court below, and are as follows:

First. That the Court admitted illegal testimony.

Carl Horne *v.* The State of Kansas.

Second. Since the trial of this cause, the defendant has discovered new evidence, material to the cause, which he could not with reasonable diligence have discovered before or at said trial.

Third. The jury was separated without leave of the Court, after retiring to deliberate upon their verdict.

Fourth. The Court misdirected the jury in a material matter of law.

Fifth. The Court erred in refusing to charge as requested by defendant's counsel.

Sixth. The verdict is contrary to law.

Seventh. The verdict is contrary to law and against the evidence.

Eighth. The Court erred in overruling the motion to quash the indictment made in this case.

Exceptions were taken, during the progress of the trial, to the various rulings of the Court below, which bring them all before this Court for revision.

It is hardly necessary to comment in detail upon the numerous points raised in the record and urged by counsel. It is sufficient to say that after a careful consideration of the various rulings of the Court, as shown by the record, we can see no error in them, so far as embraced in the first, second, third, fifth, sixth, seventh and eighth causes assigned for a new trial.

Among the instructions of the Court are the following:

"If the jury believe, from the evidence, that the facts in the case are all consistent with the supposition that the prisoner is guilty, and he can offer no resistance to that, except the character the prisoner has borne, and except the supposition that no man would be guilty of so atrocious a crime as that laid to the prisoner, they are warranted in returning a verdict of guilty."

The Court further charged "that the woman and this defendant might both be guilty as principals in *this murder.*"

An examination of the first of these charges will show that it contains a principal of law heretofore unknown. To make out the guilt of a person charged with crime, the prosecution must prove every material allegation and every ingredient of the crime. The accused is presumed innocent until this is done, and may stand on this presumption, withholding all proof until the prosecution has made out a complete case.

Take from this instruction the defense which the accused might offer of his previous good character, and the supposition that no man would be guilty of so atrocious a crime as that laid to his charge, and it leaves this proposition:

That if the jury believe from the evidence that the facts in the case are all consistent with the supposition that the prisoner is guilty, they are warranted in returning a verdict of guilty.

It is obvious that proof of good character and the supposition that no man would be guilty of so atrocious a crime as murder, cannot unfavorably affect the position of the prisoner. He may well stand on the presumption of innocence and offer no evidence. Is a jury, then, warranted in returning a verdict of guilty, when the facts in the case are all consistent with the *supposition* that the prisoner is guilty? If so, a man may first be presumed guilty, and two or three facts proven, consistent with that supposition, and the law will warrant a finding of guilty. Such is not the rule of law.

A few facts or a multitude of facts proven, all consistent with the supposition of guilt, are not enough to warrant a verdict of guilty; but, in order to convict on circumstantial evidence, it is held necessary not only that the circumstances all concur to show that the prisoner committed the crime, but that they all be inconsistent with any other rational conclusion. (2 *Hal. P. C.;* 2 *Starkie Ev.* 521, 522; 3 *Greenleaf Ev.,* § 137.) This being the true rule, it follows that in this proposition the Court misdirected the jury.

The counsel for the State, in support of the charge under consideration, read what he claimed as an identical proposition from *Wells on Circumstantial Evidence, Sec.* 161, as follows:

"If you think that the facts in this case are all consistent with the supposition that the prisoner is guilty, and can offer no resistence to that, except the character the prisoner has borne, and except the supposition that no man would be guilty of so atrocious a crime as that laid to the charge of the prisoner, that cannot much influence your minds."

So far from this sustaining the charge given, there is nothing in common but the statement of the condition of the case. The conclusions from the same statement are different. The charge given says that a certain state of facts warrants a finding of guilty, while the authority quoted shows that the same facts being proven, the proof of good character and the presumption that no man would be guilty of so atrocious a crime, cannot much influence the minds of the jury.

It was urged in argument that the Court had, in other parts of the charge, given the true rule of law as applicable to this point; but as this was a separate charge, it is impossible for us to say that it was not the controlling one with the jury. We are not insensible to the consideration that the Court, having once ably and clearly given the correct law, the probabilities are that little of essential injury may have been sustained by the defendant by this misdirection. But we have no right to consider probabilities in reference to a single case when called upon to apply the general principles of established law, and to register a precedent for the future action of courts. "We perform a single and unmixed duty when we declare upon the call of the accused what are his legal rights."

The second of the charges quoted above, is a mixed one of law and fact. The principle of law involved is, that two persons may be guilty as principals in one crime. This is true, and a proper instruction. The fact presented in the charge is, that this was a murder, by the use of the expression, "*this murder.*"

The Court has a right to present the facts in his charge, but must in that case inform the jury that they are the exclu-

sive judges of all questions of fact. (§ 215, *Code Cr. Pro.*) This was not done in this case. The charge, moreover, is not so much the presentation of facts as a conclusion from facts.

The first duty of the jury was to decide whether a murder had been committed. This duty was forestalled by the Court by intimating that *this* was *murder*. If it be considered as presenting the facts, or suggesting a conclusion from facts, it is equally error. If the first, it is error because the jury were not informed that they were the exclusive judges of the facts. If the second, it is error because it was intimating a conclusion from facts, which is the special and exclusive province of the jury.

All persons, familiar with the trial of criminal causes, have had occasion to observe with what anxiety a jury listens to catch from the Court the slightest indication of its views. This is particularly the case when matters of great doubt and difficulty are before them for decision. How then can it be known that the expression used in this charge had not some influence in determining the final result? The more able and upright the Court, the more likely are its intimations to have weight; and it is impossible to say that the jury may not have received some bias from the language used. It therefore necessarily follows that there is material error in it.

For the misdirection in these two charges, a new trial should have been awarded the acused on his motion.

The judgment is reversed with costs, the verdict set aside, and the cause remanded to the Court below, with instructions to sustain the motion for a new trial.